DAVID T. PROSSER, J.
¶ 44. (dissenting). The issue presented in this case is whether two Milwaukee police officers had probable cause to stop a vehicle when they perceived what they believed was an unlit light bulb in the tail lamp of the vehicle. There is dispute whether there was or was not an unlit light bulb in the tail lamp of the vehicle. The majority concludes that it makes no difference because "we do not interpret Wis. Stat. § 347.13(1) as requiring every single light bulb in a tail lamp to be lit." Majority op., ¶ 3. Thus, the majority concludes that the officers made an unconstitutional mistake of law when they acted on the belief that a tail lamp with an unlit bulb was not in "proper working condition at all times" and not "in good working order."
*692 ¶ 45. In my view, the conclusion that partially unlit tail lamps comply with Wis. Stat. § 347.13(1) if they are visible from 500 feet away creates a vague, unworkable standard for law enforcement. Consequently, I respectfully dissent.
I
¶ 46. On July 3, 2010, two Milwaukee police officers, William Feely and Michael Wawrzonek, were on patrol duty near 2900 West Capitol Drive in the City of Milwaukee. It was approximately 9:30 p.m. Officer Feely was driving a marked squad car. Officer Wawrzonek was in the passenger seat. The officers spotted a 1977 Buick Electra turn south on North 28th Street. Both officers observed what they perceived as a defective tail lamp. When the squad car was approximately three car lengths behind the Electra, it activated its red and blue emergency lights to make a stop of the Electra. At the same time, the vehicle slowed down and pulled over to the curb to stop.
¶ 47. Following the stop, the officers seized a pistol belonging to the defendant, Antonio D. Brown, who was riding as a passenger in his own vehicle because he was intoxicated. Brown was a convicted felon on parole. He subsequently moved to suppress evidence of the weapon on grounds that police "seizure" of his vehicle was unlawful.
¶ 48. At the suppression hearing on January 13, 2011, the two officers described the stop. Officer Wawrzonek testified:
Q. Is there anything specific about that vehicle that caught your attention?
A. Yeah, defective tail light.
*693 Q. Do you remember what tail light it was that was defective on that unit?
A. It was the driver side tail lamp. There is a wide band and there is actually three light panels on that wide band and one of those panels was out.
Q. Now, when you said that there was a defective tail light... are you referring to the reflective red lights or the white back-up lights?
A. One of the red lights. He was going — he was going forward so there was no reverse going on at this point so I wouldn't see a white light. It was one of the red lights.
Q. So two of the panels were working properly?
A. That's my recollection.
¶ 49. When Officer Feely testified, he identified the specific light that appeared to be defective:
Q. And do you recall what the basis for the stop was, Officer?
A. Defective tail lamp.
Q. And when you say that, did you remember specifically which tail light was out?
A. Believe it was the driver side middle one.
Q. Would that have been a red or white light if you recall?
A. Red.
*694 ¶ 50. At a continuation of the suppression hearing on January 21, 2011, the driver of the Electra testified that there were no defects in the tail lamps. He also testified that the vehicle "has red lights on both sides, and a white light is the reverse light, and the middle light is a brake light."
¶ 51. The driver, Willie Lipsey (Lipsey), said that when the vehicle was operating with its lights on, there were only two red lights showing in the tail lamps on each side of the rear license plate. He said a red brake light situated between the other red lights in the tail lamp[1] did not illuminate until the driver applied the brakes.
¶ 52. This description of the operation of the rear lights does not explain why the officers noticed a difference in the two tail lamp panels — with only the left panel appearing to have a gap between the lights. This description also fails to explain why the officers did not state that both panels were working perfectly when the driver applied the brakes before stopping at the curb. It may have been because the left brake light was not working when the vehicle turned the corner and when it came to a stop. It is also possible that one of the light bulbs in the tail lamp, other than the brake light, was out.
¶ 53. There appear to be only three possible scenarios: (1) one of the light bulbs in the left tail lamp was not working; (2) the officers thought that one of the light bulbs in the left tail lamp was not working;[2] or (3) the officers were not telling the truth about what they saw. Although the facts remain in dispute, the *695 circuit court found that the officers were credible when they testified that they saw a defective tail lamp and that Lipsey was not credible when he testified that he remembered that all the rear lights were functioning properly.
II
¶ 54. Wisconsin has an elaborate motor vehicle code,[3] including detailed provisions for motor vehicle lighting equipment. See Wis. Stat. §§ 347.06-347.30.
¶ 55. Chapter 347 begins with a section that indicates that "Words and phrases defined in s. 340.01 are used in the same sense in this chapter unless a different definition is specifically provided." Wis. Stat. § 347.01.
¶ 56. Section 340.01 includes definitions for numerous lamps such as "Clearance lamps,"[4] "Direction signal lamp,"[5] "Headlamp,"[6] "Identification lamps,"[7] "Multiple beam headlamp,"[8] "Stop lamp,"[9] and "Tail *696 lamp."[10] Chapter 347 contains both general and specific provisions governing these various types of lighting equipment.
¶ 57. For example, Wis. Stat. § 347.06 reads in part:
(1) [N]o person may operate a vehicle upon a highway during hours of darkness unless all headlamps, tail lamps and clearance lamps with which such vehicle is required to be equipped are lighted.
(3) The operator of a vehicle shall keep all lamps and reflectors with which such vehicle is required to be equipped reasonably clean and in proper working condition at all times.
¶ 58. Wisconsin Stat. § 347.06 is relevant to this case because it prohibits operation of a motor vehicle during hours of darkness unless "all. . . tail lamps . . . are lighted." Wis. Stat. § 347.06(1). Moreover, the operator of a motor vehicle "shall keep all lamps ... in proper working condition at all times." Wis. Stat. § 347.06(3).
¶ 59. Wisconsin Stat. § 347.13 is entitled "Tail lamps and registration plate lamps." The section reads in part:
(1) No person shall operate a motor vehicle, mobile home or trailer or semitrailer upon a highway during hours of darkness unless such motor vehicle, mobile home or trailer or semitrailer is equipped with at least one tail lamp mounted on the rear which, when lighted during hours of darkness, emits a red light plainly visible from a distance of 500 feet to the rear. No tail *697 lamp shall have any type of decorative covering that restricts the amount of light emitted when the tail lamp is in use. No vehicle originally equipped at the time of manufacture and sale with 2 tail lamps shall be operated upon a highway during hours of darkness unless both such lamps are in good working order. This subsection does not apply to any type of decorative covering originally equipped on the vehicle at the time of manufacture and sale.
(4) Tail lamps and registration plate lamps shall be so wired as to be lighted whenever the headlamps or auxiliary driving lamps are lighted.
Wis. Stat. § 347.13.
¶ 60. The first sentence of § 347.13(1) serves two purposes. It prohibits a person from operating a motor vehicle during hours of darkness unless the vehicle is equipped with at least one tail lamp. It also establishes equipment standards for motor vehicle tail lamps.
¶ 61. Most vehicle operators seeking to comply with motor vehicle equipment laws are dependent upon automobile manufacturers and parts suppliers for the equipment on their vehicles. These operators expect that the tail lights they purchase will meet the requirements of the law. All four states bordering Wisconsin have statutes like Wis. Stat. § 347.13(1) that require 500 feet of visibility from rear lamps, implying that 500 feet is a common standard.[11]
*698 ¶ 62. The majority opinion appears to conclude that if a tail lamp can be seen from 500 feet, it cannot violate the motor vehicle equipment statutes. Majority op., ¶ 3.
¶ 63. The next sentence in Wis. Stat. § 347.13(1), which bears on functionality, shows that such a conclusion is incorrect. The second sentence reads: "No tail lamp shall have any type of decorative covering that restricts the amount of light emitted when the tail lamp is in use." Wis. Stat. § 347.13(1) (emphasis added). This sentence demonstrates that there is a concern that each tail light be lit and unobscured. The sentence does not say that a decorative covering may not restrict the amount of light emitted so as to reduce visibility unless it can be seen from 500 feet. The sentence permits no restriction of light.
*699 ¶ 64. The third sentence of Wis. Stat. § 347.13(1) requires that there be no flaw in the tail lamps: "No vehicle originally equipped at the time of manufacture and sale with 2 tail lamps shall be operated upon a highway during hours of darkness unless both such lamps are in good working order." Id. (emphasis added). This sentence requires both tail lamps to be operating in good working order. When this sentence is combined with Wis. Stat. § 347.06(3), an operator is required to keep all tail lamps in proper working condition at all times; that is, in good working order at all times.
¶ 65. Wisconsin Stat. § 347.14, relating to "stop lamps," reads in part as follows:
(1) No person shall operate a motor vehicle... upon a highway unless such motor vehicle... is equipped with at least one stop lamp mounted on the rear and meeting the specifications set forth in this section.... A stop lamp may be incorporated with a tail lamp. No vehicle originally equipped at the time of manufacture and sale with 2 stop lamps shall be operated upon a highway unless both such lamps are in good working order.
(2) A stop lamp shall be so constructed as to be actuated upon application of the service or foot brake ... and shall emit a red or amber light plainly visible and understandable from all distances up to 300 feet to the rear during normal sunlight when viewed from the driver's seat of the vehicle following.
Wis. Stat. § 347.14 (emphasis added).
¶ 66. Like the previous section, Wis. Stat. § 347.14 requires a particular type of lighting equipment to be "in good working order." Inasmuch as a 1977 Buick Electra has only one rear brake light on each side of the vehicle, a brake light that is defective is 100 *700 percent defective and cannot be — under any reasonable definition — in "proper working condition" or "in good working order."
¶ 67. The Wisconsin Department of Transportation (DOT) has developed administrative rules to flesh out its lighting equipment statutes. See Wis. Admin. Code § TRANS 305.
¶ 68. Among these rules are the following:
Trans 305.01 Purpose and Scope.
(1) The purpose of this chapter is to prescribe minimum equipment requirements for vehicles and standards for the equipment used on vehicles.
Tráns 305.02 Applicability.
(7) Nothing in this chapter is intended to modify the provisions of ch. 347, Stats., and all vehicles to which this chapter applies shall also comply with the requirements of ch. 347, Stats.
Trans 305.03 Enforcement.
No person may operate or allow to be operated on Wisconsin highways any vehicle subject to this chapter that is not in conformity with the applicable requirements of this chapter.
Trans 305.15 Stop Lamps.
(1) Every automobile originally manufactured commencing with the 1950 models ... shall be equipped *701 with at least 2 stop lamps. All other motor vehicles shall be equipped with at least one stop lamp.
(2) The stop lamps of every vehicle shall be maintained in proper working condition and in conformity with this section and s. 347.14, Stats.
Trans 305.16 Tail Lamps.
(1) Every automobile originally manufactured commencing with the 1950 models ... shall be equipped with at least 2 tail lamps. All other motor vehicles shall be equipped with at least one tail lamp.
(2) The tail lamps of every motor vehicle shall be maintained in proper working condition and in conformity with this section and s. 347.13 (1) and (2), Stats.
(3) All wiring and connections shall be maintained in good condition.
(5) The tail lamps shall be so wired as to be lighted whenever the parking lamp or headlamps are lighted.
Wis. Admin. Code §§ TRANS 305.01 (emphasis added), 305.02, 305.03, 305.15 (emphasis added), 305.16 (emphasis added).
¶ 69. The rules repeat the phrase "in proper working condition" from Wis. Stat. § 347.06(3), even in Wis. Admin. Code. § TRANS 305.15 and § TRANS 305.16, which implement Wis. Stat. §§ 347.14 and 347.13 respectively. Those statutes use the phrase "in good working order." This suggests that the DOT sees these phrases as interchangeable.
¶ 70. As the majority notes, we may turn to a dictionary to construe undefined words according to their ordinary meanings. Majority op., ¶ 28. However, the majority's definition of "good working order" is *702 incomplete because it defines "good working order" and "working order" to mean essentially the same thing. Using dictionary definitions, the majority defines "good working order" as "suitable or functioning for the intended use." Id., ¶ 29 (footnote omitted).
¶ 71. According to Webster's Third New International Dictionary 2635 (1986), "Working order" means "a condition of a machine in which it functions according to its nature and purpose . . . ." This definition is substantially similar to the majority's definition of "good working order." Thus, the majority's definition renders "good" mere surplusage. In my view, "good working order" must mean something more than "working order."[12]
¶ 72. As the majority notes, one definition of "good" is "adapted to the end designed or proposed: satisfactory in performance." Majority op., ¶ 29 n.13. However, there is more to the definition. The cited definition goes on to define "good" as "free from flaws or defects" or "not impaired." Webster's Third New International Dictionary 978 (1986). The definition of "good" that includes "free from flaws or defects" is more helpful than the majority's definition because it better fits within the framework of statutory analysis and the aversion to surplusage. It also gives law enforcement a *703 clear standard to apply when confronted with broken tail lights.
¶ 73. Because "proper working condition" and "good working order" appear to be interchangeable terms, it is hard to imagine that a tail lamp or a stop lamp that has defective lights can be described as being "in proper working condition" and the condition to which the lamp should be kept "at all times." Wis. Stat. § 347.06(3).
Ill
¶ 74. This case is about much more than the felony conviction of Antonio Brown. The majority opinion significantly dilutes the meaning of "proper working condition" and "good working order" in the lighting equipment statutes. This is likely to affect the enforcement of these statutes.
¶ 75. Wisconsin Stat. § 347.30 provides:
(1) Any person violating s. 347.06 or 347.13(2), (3) or (4) may be required to forfeit not less than $10 nor more than $20 for the first offense and not less than $25 nor more than $50 for the 2nd or subsequent conviction within a year.
(2) Any person violating ss. 347.03, 347.07 to 347.12, 347.13(1) or 347.14 to 347.29 may be required to forfeit not less than $10 nor more than $200.
¶ 76. The majority concludes that Wis. Stat. § 347.13(1) does not require "every single light bulb in a tail lamp to be lit." Majority op., ¶ 3. But it does not say what is required for a violation of this statute. The answer cannot turn on whether the tail lamp can be seen from 500 feet because that is not the correct statutory standard and would pose an impossible burden of proof on law enforcement.
*704 ¶ 77. The majority's analysis is bound to affect the interpretation of other lighting equipment statutes involving more than one light, and other statutes that employ the phrases "in proper working condition" or "in good working order."[13]
¶ 78. Because the court has diluted the meaning of these phrases, it has seriously impaired law enforcement's ability to stop vehicles to alert the drivers of equipment defects. Of course these stops sometimes serve other purposes. Now, these purposes are in jeopardy because of the confusion created by the court's decision.
¶ 79. Now that law enforcement officers are precluded from pulling over vehicles with flawed tail lamps if the tail lamps are visible from 500 feet, there is likely to be a bonanza for litigants seeking to challenge motor vehicle stops. The uncertainty in the law will create difficulties for law enforcement and new burdens on circuit courts.
¶ 80. In my view, this court is making a mistake. It should be providing a clear, commonsense, easy-to-understand standard: if a tail light or brake light is out, the tail lamp or stop lamp is not in good working order.
¶ 81. For the foregoing reasons, I respectfully dissent.

 "A stop lamp may be incorporated with a tail lamp." Wis. Stat. § 347.14. From the testimony, it seems as though the stop lamp was incorporated with the tail lamp in the Electra.

 This possibility would have been a mistake of fact.

 See Wis. Stat. chs. 340-51.

 " 'Clearance lamps' means lamps on the left and right sides of the front and rear of a vehicle which show to the front and rear to mark the extreme sides of the vehicle." Wis. Stat. § 340.01(7).

 " 'Direction signal lamp' means a lighting device used to indicate the intention of the operator of a vehicle to change direction." Wis. Stat. § 340.01(13).

 " 'Headlamp' means a major lighting device used to provide general illumination ahead of a vehicle." Wis. Stat. § 340.01(21).

 " 'Identification lamps' means lamps grouped in a horizontal row and mounted on the permanent structure of the vehicle at or near the vertical center line." Wis. Stat. § 340.01(23m).

 " 'Multiple beam headlamp' means a headlamp designed to permit the operator of the vehicle to use any one of 2 or more distributions of light on the roadway." Wis. Stat. § 340.01(36).

 " 'Stop lamp' means a device giving a steady warning light to the rear of a vehicle to indicate the intention of the operator *696 of the vehicle to diminish speed or stop." Wis. Stat. § 340.01(63).

 n ,rpaq lamp1 means a device to designate the rear of a vehicle by a warning light." Wis. Stat. § 340.01(66).

 Every motor vehicle, trailer, or semi-trailer shall also exhibit at least 2 lighted lamps, commonly known as tail lamps, which shall be mounted on the left rear and right rear of the vehicle so as to throw a red light visible for at least 500 feet in the reverse direction ....
625 Ill. Comp. Stat. Ann. 5/12-201(b) (West 2014).
*698 Every motor vehicle and every vehicle which is being drawn at the end of a train of vehicles shall he equipped with a lighted rear lamp or lamps, exhibiting a red light plainly visible from a distance of five hundred feet to the rear. All lamps and lighting equipment originally manufactured on a motor vehicle shall be kept in working condition or shall he replaced with equivalent equipment.
Iowa Code Ann. § 321.387 (West 2014).
A motor vehicle, trailer, semitrailer, pole trailer, or vehicle which is being drawn in a train of vehicles shall be equipped with at least 1 rear lamp mounted on the rear, which, when lighted as required by this act, shall emit a red light plainly visible from a distance of 500 feet to the rear.
Mich. Comp. Laws Ann. § 257.686(1) (West 2014).
"Every motor vehicle and every vehicle that is being drawn at the end of a train of vehicles must be equipped with at least one taillamp, exhibiting a red light plainly visible from a distance of 500 feet to the rear." Minn. Stat. Ann. § 169.50.1(a) (West 2014).

 Two online definitions of "working order" are different from the majority's minimalist definition. One dictionary suggests "in working order" means "working correctly, without any problems." MacMillanDictionary, http://www.macmillandictionary.com/us/dictionary/american/working-order (last visited July 3, 2014). Another dictionary suggests that "(in) working order" means "working properly and not broken" or "be in good/perfect/full etc working order." Longman Dictionary of Contemporary English, http://www.ldoceonline.com/dictionary /working_l (last visited July 3, 2014).

 For instance, there are at least 11 statutes in addition to Wis. Stat. § 347.13 that use the phrase "good working order." See Wis. Stat. §§30.62, 48.658, 283.31, 285.30, 347.14, 347.36, 347.38, 347.42, 348.15, 350.055(1m) (2013-14), 350.095.